# HENRY WARNE *et al.*
## *v.*
## LAWRENCE M. BAKER.

1. HIGHWAYS—*jurisdiction of commissioners—how acquired.* The township organization law authorizes commissioners of highways to alter or discontinue any road or lay out a new road; but it must be upon the petition of any number of legal voters, not less than twelve, residing within three miles of the road to be altered, discontinued or laid out.

2. SAME—*in what town such voters must reside—construction of the statute.* A proper construction of that act can only authorize the legal voters of the towns to be affected by the action of the commissioners to become petitioners for the alteration or location of the road. The requirement of the law in that regard is not answered when any portion of the requisite number of the petitioners reside out of the town in which the road is to be altered or located, although they may reside within three miles of such road.

APPEAL from the Court of Common Pleas of the city of Elgin; the Hon. R. G. MONTONY, Judge, presiding.

In 1859, Lawrence M. Baker instituted his action of trespass in the Circuit Court of Kane county, against Henry Warne and David Bowne, alleging that on certain days in the month

of February of that year, the defendants broke and entered the plaintiff's close, &c.

The defendants pleaded not guilty, and two special pleas: First, that defendants were highway commissioners of the town of Campton, in Kane county; that before and at the time, &c., a public highway had been laid out and ordered to be opened on the town line between the towns of Campton and Plato in said county, and upon and across the close in question. That so much of said road as crossed the said close, had been duly allotted to the town of Campton as a road district to keep open and in repair. That plaintiff, Baker, was duly notified to remove the said fences out of such road, that he refused to do so. The defendants, as such commissioners removed the said fences, which are the trespasses complained of. Second plea, that said close was a public highway, &c.

The plaintiff replied that there was not a highway laid out, &c. A trial resulted in a verdict and judgment for the plaintiff. On an appeal by the defendants to the Supreme Court that judgment was reversed and the cause remanded. The case is reported in 24 Ill. 351. The question in the case as then presented, was, whether an appeal would lie from the decision of commissioners of highways to supervisors when the road to be laid out, relocated, &c., was on the line between two towns. In the Supreme Court the right of such appeal was sustained, and it was, therefore, held that the Circuit Court erred in excluding evidence offered by the defendants going to show that the road in question had been duly relocated by the supervisors, on an appeal from the commissioners of highways, who had refused to do so. Upon the cause being remanded to the Circuit Court, it was removed upon change of venue, by agreement, into the Court of Common Pleas of the city of Elgin, where it came on for trial before the court at the May Term, 1863.

The case now presents a different question. It appears the alleged trespass was committed by the defendants in the removal of a fence on the land of the plaintiff, which they claim was

their right to do, as commissioners of highways, in the performance of their duty in opening a public road, which had been ordered to be opened by the proper authorities, over the plaintiff's land, and whether that road was legally located is the question arising upon the record. These are the circumstances connected with the action of the commissioners: In January, 1858, fifteen persons residing in Kane county, which had adopted township organization, made the following petition:

"The undersigned, legal voters residing within three miles of the following proposed road alteration, would represent that it is necessary and proper, and your petitioners ask, that all that part of the road commonly known as the Elgin and Sycamore road in the town of Plato, and west of the St. Charles and Genoa road, be vacated and relocated as follows: Commencing at the northwest corner of the town of Campton, from thence eastward on the line dividing Plato and Campton until it intersects the St. Charles and Genoa road, or as near said line as the location of William Brophy's house and door yard will justify. Said relocation will pass over lands owned by William Brophy, L. M. Baker, Daniel Reynolds, and others not known."

The commissioners of highways of the town of Campton met the commissioners of Plato, and upon consideration of the subject, the commissioners of Campton were of the opinion the road should be altered as asked in the petition; but the commissioners of Plato not agreeing thereto, the application was refused.

In April, 1858, five persons of the town of Burlington, and three of the town of Virgil, in Kane county, eight in all, five of whom were of the original petitioners, presented their appeal from the decision of the commissioners, to the town clerks of Campton and Plato, who thereupon notified three supervisors, one from each of the towns of St. Charles, Virgil and Rutland, of the appeal. On the 1st of May, 1858, two of the supervisors, those of Virgil and Rutland, met, and the third not being in attendance, they filled the vacancy by appointing the supervisor of Kaneville. Thereupon the three supervisors, upon

consideration of the matter of the appeal, ordered that the road be altered and relocated as asked in the petition; and finding the damages occasioned thereby to be $250, they ordered that the town of Campton pay $125 thereof, and the town of Plato the same amount.

It appears that only one of the original petitioners resided in the town of Plato, and he owned no land there; three of them resided in Campton, and the others all resided in the towns of Burlington and Virgil.

The court below found the defendants guilty, and assessed the plaintiff's damage at fifty cents, and entered judgment thereon.

The defendants thereupon took this appeal, and now insist the road was regularly and legally relocated, and therefore they were justified in removing the plaintiff's fence in opening the same. On the other hand, the appellee contends the commissioners or supervisors had no jurisdiction over the subject matter of the petition, because the requisite number of the petitioners did not reside in the town to be affected thereby.

Messrs. PLATO & SMITH, for the appellants.

Mr. S. WILCOX, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The questions now presented for consideration are different from those raised and determined when the case was previously before this court. It is now insisted that the commissioners of the two towns had no jurisdiction to hear and determine the question of altering and relocating the road in controversy, and consequently the supervisors acquired no authority to vacate or relocate the road. It appears that only one of the petitioners resided in the town of Plato, and that he was not a voter, and only three others resided in Campton, the others all residing in the towns of Burlington and Virgil. It is insisted that only legal voters of the towns in which the road was to be

located or vacated, and liable to the expense of opening and repairing the same, can legally petition for such alteration of a road in existence, or the establishment of a new road.

The first section of the twelfth article of the township organization law (Scates' Comp. 353) declares that commissioners of highways may alter or discontinue any road, or lay out a new road, but it must be upon the petition of any number of legal voters not less than twelve, residing within three miles of the road to be altered, discontinued or laid out. Is this requirement answered when the requisite number of legal voters residing within the required distance have signed the petition, although not residents of the town? The statute has created townships into corporations for the management of their local affairs. It has empowered them to transact township business, such as levying taxes, repairing roads, building bridges, altering, relocating and establishing roads, the election of officers and the transaction of other business. It was manifestly the design of the legislature, when it created these bodies, to confer the powers authorized to be exercised upon the citizens of the town.

No person would, for a moment, suppose that voters of one town should be permitted to hold office in another. Nor that such a voter could have the right to participate in the levy of a town tax, or the determination to erect a bridge in a town different from that in which he resides. Nor can it be contended, that voters residing in one county could participate in the affairs of a town in a different county. Citizens of Indiana or any other adjoining State may be legal voters within their jurisdictions, and yet it will not be contended, that they may legally join in such a petition as that under consideration, in an adjoining town in this State, although they might reside within three miles of the road proposed to be altered or relocated. The design of the law is, manifestly, to give the voters of the town the control of their corporation to the extent of the power conferred and the duties to be performed.

It was not intended that the voters of one town should control the action of the officers of another town, in matters

affecting their corporation.   A fair and reasonable construction of the act, can only authorize the legal voters of the towns to be affected by the action of the commissioners, to become petitioners for the alteration or location of a road.   In this case, there was not the requisite number of legal voters of the towns of Plato and Campton, who signed the petition.   Without the legal number, the commissioners had no jurisdiction to act, and the appellate tribunal could not acquire such jurisdiction by removing the case to them.   If jurisdiction was not acquired in the first instance, it could not attach on its removal to the supervisors.   They having no power to act for a want of jurisdiction, their order relocating the road and vacating the old one, was inoperative and void.   The appellants, therefore, could not justify their acts in opening the road under a void order.

The judgment of the court below is therefore affirmed.

*Judgment affirmed.*